**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER D. WRIGHT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 4:07-cv-369** |
| | § | |
| **JUDSON T. WEAVER,** | § | |
| **JOE K. WEAVER, CATHEY T. WEAVER,** | § | |
| **BRIGHT STAR HOSPITALITY, INC.,** | § | |
| **THE BRIGHT STAR LOUNGE,** | § | |
| **THE DAYS INN, SSR CORP, INC.,** | § | |
| **SUCHA SINGH DHILLON,** | § | |
| **HARJEET SINGH, THE TEXAS** | § | |
| **LOUNGE, INC., VIKRAM SINGH** | § | |
| **CHEEMA, DHILLON ENTERPRISES,** | § | |
| **INC., DHILLON ESTATES, L.P., US** | § | |
| **CHEEMA, INC., 128 TEXAS, LLC, and** | § | |
| **1495JG, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER
DENYING DEFENDANTS JOE AND CATHEY WEAVER'S MOTIONS FOR
SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS SINGH, CHEEMA, US CHEEMA, INC., 128 TEXAS, LLC, AND
1495JG, INC.'S MOTION FOR SUMMARY JUDGMENT**

Before the court are Defendants':

- "Motion for Summary Judgment on Behalf of Joe Weaver" (Dkt. 91.);

- "Motion for Summary Judgment on Behalf of Cathey Weaver" (Dkt. 92); and

- "Defendants Harjeet Singh, Vikram Cheema, US Cheema, Inc., 128 Texas, LLC and 1495JG, Inc.'s Motion for Summary Judgment" (Dkt. 93).

Having considered Defendants' motions, the responsive briefing and the relevant legal

principles, Defendants Joe and Cathey Weaver's motions for summary judgment (Dkt. 91, 92.)

are denied and Defendants Harjeet Singh, Vikram Cheema, US Cheema, Inc., 128 Texas, LLC, and 1495JG, Inc.'s motion for summary judgment (Dkt. 93.) is granted in part and denied in part.

## I. BACKGROUND

This is an assault and battery, negligence, and dram shop liability suit brought under Texas law. The Plaintiff, Christopher Wright, alleges that on March 7, 2007, Defendant Judson Weaver spit upon and assaulted him in the parking lot of the Bright Star Lounge in Sulphur Springs, Texas. Although the parties disagree on many facts surrounding this case, there is some agreement about the events that transpired between March 6, 2007 and March 7, 2007.

On March 6, 2007, Judson Weaver and a group of his friends went out to celebrate a successful day of business at the car dealership where Weaver worked. The group began their evening at the bar of the Chili's in Sulphur Springs and eventually made their way to the Bright Star Lounge ("the Bright Star"). Weaver and his friends arrived at the Bright Star between 10:30 and 11:00 p.m. There were two bartenders working at the Bright Star that evening, Rebecca Nelson and Sarah Ashley. Christopher Wright, a black man, was a customer in the bar that night. Wright was dating bartender Sarah Ashley.

Although it is undisputed that Weaver and members of his group had been drinking, the parties disagree about how much Weaver had been drinking and about how much Weaver had to drink at the Bright Star. According to some reports, Weaver was intoxicated and consumed more than one drink at the Bright Star. Others, however, can only remember seeing Weaver have one drink. Whatever the case, at around 11:00 or 11:30 p.m., Weaver apparently approached Ms. Ashley and allegedly made a racially charged comment about Ashley dating Wright. (Nelson Dep. at 38.) Although it is not clear whether Wright heard or was aware of this

comment, about an hour later, as the bar was closing there was a confrontation between Wright and Weaver in the parking lot of the Bright Star.  (*Id.* at 40–41.)  It is unclear what was said between Wright and Weaver at this time, but around 12:15 a.m. on March 7, 2007, Weaver and his friends were asked to leave the premises.  Weaver and his friends apparently got into their cars and began to drive away.  Wright remained at the Bright Star while Ms. Ashley and Ms. Nelson closed the bar.  As the group was leaving the bar for the night, Weaver and his friends returned and a fight ensued between Wright and Weaver.  Weaver was driving a GMC Yukon and remained in the vehicle during the altercation.  Wright apparently approached the window after Weaver made a racial epithet and spit upon him.  Punches were thrown and Weaver hit the accelerator dragging Wright across the parking lot.  When Weaver's vehicle hit a curb, Wright was thrown from the vehicle onto the pavement.

Based on these events, Wright sued Defendant Judson Weaver for assault and battery and in the alternative for negligence.  Wright also sued Defendants Joe and Cathey Weaver (Judson's parents) for negligent entrustment of the vehicle driven on the night of the altercation.  In addition, Wright sued Defendants Harjeet Singh, Vikram Cheema, US Cheema, Inc., 128 Texas, LLC, and 1495JG, Inc. under the Texas Dram Shop Act and for negligent failure to provide security.

## II.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The purpose of this rule is to isolate and dispose of factually

unsupported claims or defenses. *Celotex*, 477 U.S. at 323–24. The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Instead, by its very terms, Rule 56(c) requires that there be "no *genuine* issue of *material* fact." *Id.* at 248. Materiality is a question of substantive law; therefore "[o]nly disputes over facts that affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the nonmovant bears the burden of proof, however, the movant may discharge its burden simply by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325. Once the movant has carried its burden, the nonmovant "must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In order to create a genuine issue, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a motion for summary judgment, the court must not weigh the evidence and

determine the truth of the matter. The only inquiry necessary "is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. In making this determination, all doubts must be resolved in favor of the nonmoving party and any reasonable inferences are to be drawn in favor of that party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).

### III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON NEGLIGENT ENTRUSTMENT CLAIMS[1]

#### A. DEFENDANTS' OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Defendants object to Exhibits 4A and 10 through 37 of Plaintiff's summary judgment evidence on the grounds that these documents are uncertified, unauthenticated copies that are not relevant to the dispute. Because the documents are not certified or authenticated, Defendants also argue they are inadmissible hearsay. A district court may only consider admissible evidence in ruling on a motion for summary judgment. *Mercsh v. City of Dallas*, 207 F.3d 732, 734–35 (5th Cir. 2000). The admissibility of summary judgment evidence is subject to the same standards and rules that govern the admissibility of evidence at trial. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n.3 (5th Cir. 1992). However, because the court did not rely on any of these exhibits in ruling on Defendants' motion for summary judgment, it need not rule on the admissibility of the evidence.

---

[1]On October 5, 2009, Defendants Joe and Cathey Weaver filed separate motions for summary judgment. (Dkt. 91, 92.) Because the motions presented virtually identical issues of law and fact the parties consolidated their responsive briefing. The court's discussion of Defendants' motions is also consolidated.

### B. NEGLIGENT ENTRUSTMENT ANALYSIS

To establish liability under a negligent entrustment theory, a plaintiff must show: "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, (4) that the driver was negligent on the occasion in question and (5) that the driver's negligence proximately caused the accident." *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005) (*quoting Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).

### 1. Parental Liability for Actions of Adult Child

In their motions for summary judgment (Dkt. 91, 92.), Defendants Joe and Cathey Weaver first argue that Plaintiff's negligent entrustment claim should fail as a matter of law because parents cannot be held liable for the conduct of adult children. This argument is inapposite.

In Texas, parental liability for the acts of children and liability for negligent entrustment are founded on different principles. Parental liability for the acts of their children is based on the special relationship that exists between parent and child. *Wofford v. Blomquist*, 865 S.W.2d 612, 614 (Tex. App.—Corpus Christi 1993, writ denied). This relationship is said to impose a legal duty on parents to control the conduct of their children. *Id.* The basis for imposing liability in a negligent entrustment case, on the other hand, "is that ownership of the thing gives the right of control over its use." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007). Although "[n]o current Texas law imposes liability on a parent for the actions of an adult child," this exception to a parent's duty in general negligence claims does not relieve a parent

from liability for negligent entrustment. *Villacana v. Campbell*, 929 S.W.2d 69, 75 (Tex. App.—Corpus Christi 1996, writ denied). Therefore, in the present case, the fact that Defendants Joe and Cathey Weaver in their role as parents had no duty to control the conduct of their adult son does not relieve them from potential liability for negligent entrustment.

## 2. Ownership

Defendants next argue that summary judgment is proper because Plaintiff cannot establish that either Joe or Cathey Weaver was the owner of the vehicle driven by Judson Weaver on the night of the incident. Although ownership is an essential element of any negligent entrustment claim, this argument fails in the present case because there is conflicting summary judgment evidence as to the true owner of the vehicle.

In order to survive summary judgment, the plaintiff in a negligent entrustment case must create a fact issue that the defendant owned the vehicle entrusted. *See Dean v. Lowery*, 952 S.W.2d 637, 639 (Tex. App.—Beaumont 1997, pet. denied). Under Texas law, "ownership" is a term that eludes clear legal definition. *Realty Trust Co. v. Craddock*, 131 Tex. 88, 94–95, 112 S.W.2d 440, 443 (1938). What is clear, however, is that the definition of ownership varies according to the context. *Id.*

In the context of automobile ownership, the Certificate of Title Act defines the owner of a vehicle as "a person, other than a manufacturer, importer, distributor, or dealer, claiming title to or having a right to operate under lien a motor vehicle that has been subject to a first sale." TEX. TRANSP. CODE ANN. § 501.002(16) (Vernon 2007). Therefore, in general, the name on the certificate of title creates a presumption that the person named on the title is the owner of the vehicle. *Pioneer Mut. Compensation Co. v. Diaz*, 177 S.W.2d 202, 204 (Tex. 1944). But, when

the name on the certificate of title differs from the name of the person in possession of the automobile, the name on the certificate of title creates only a rebuttable presumption that the owner named on the title is the actual owner of the vehicle. *Id.* "[This] presumption, however, is not evidence, but is an administrative presumption which vanishes when positive evidence to the contrary is introduced." *Id.* (quotations omitted). Evidence that rebuts the presumption of ownership, does not, in all cases, conclusively establish ownership. *Dean*, 952 S.W.2d at 639. Therefore, while issues of automobile ownership are often legal questions, "[u]ndoubtedly in some cases the question of automobile ownership may be both factual and legal requiring submission to the jury of the factual issue." *Smith v. Allstate Ins. Co.*, 467 F.2d 104, 106 (5th Cir. 1972).

To determine ownership of an automobile after the presumption of ownership has been rebutted, Texas courts look to evidence such as: the name on the certificate of title; the individual with possession and control of the vehicle; the individual responsible for paying liens on the vehicle; and the name on the insurance for the vehicle. *See, e.g.*, *DeBlanc v. Jensen*, 59 S.W.3d 373, 376 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (non-owner may be liable for negligent entrustment if non-owner had right to control vehicle); *Dean*, 952 S.W.2d at 639–40 (court considered lien and insurance on vehicle among evidence of ownership); *Strickland Transp. Co. v. Ingram*, 403 S.W.2d 192, 194 (Tex. App.—Texarkana 1966, writ dism'd w.o.j.) (the owner of a vehicle "may be satisfactorily defined as a person or entity claiming ownership and having possession or exercising control over it"); *Pioneer*, 177 S.W.2d at 204 (certificate of title evidence of ownership).

The parties do not dispute the GMC Yukon was titled in Defendant Cathey Weaver's

name.  The issue, therefore, is whether Defendants have presented enough positive evidence to eliminate a fact issue regarding ownership.  Here, the evidence indicates that Judson Weaver sold the Yukon to his parents while he was employed as a sales agent at a car dealership. (Judson Weaver Dep. at 38.)  To consummate the purchase, the Weavers traded in a vehicle owned by the family.  (Joe Weaver Dep. at 34–35.)  The vehicle is titled in Cathey Weaver's name and insured by Joe and Cathey Weaver.  (Joe Weaver Dep. at 35.)  According to Judson, the family structured the sale in this way so that Judson would receive a commission on the sale. (Judson Weaver Dep. at 38.)  The Weavers maintain that although Joe and Cathey had legal title to the vehicle, Judson had complete control over the vehicle, performed all the maintenance, and purchased gas for the vehicle.  (Judson Weaver Aff'd ¶ 3.)

While this evidence may be sufficient to rebut the presumption of ownership created by the certificate of title, it does not conclusively resolve the issue of ownership.  *See Dean*, 952 S.W.2d at 639.  Instead, there is conflicting evidence regarding ownership of the Yukon.  Some of the summary judgment evidence indicates Joe and Cathey Weaver are the actual owners of the vehicle: they paid for the vehicle; insured the vehicle; and title was in Cathey's name.  Other summary judgment evidence indicates Judson Weaver was the actual owner of the vehicle: he maintained the vehicle; drove the vehicle; and had possession and control over the vehicle. Therefore, it is unclear whether the Yukon was owned by Joe Weaver, Cathey Weaver, or Judson Weaver.  Resolution of this fact issue is not within the province of the court on a motion summary judgment.

## 3.  Competence of Driver

Defendants next argue Plaintiff's negligent entrustment claim must fail as a matter of

law, because there is not sufficient evidence that Judson Weaver was an unlicensed, incompetent, or reckless driver. The parties do not argue that Weaver was unlicensed, therefore the issue to be decided is whether there is evidence that Weaver was a reckless or incompetent driver.

Like the definition of ownership, the definition of "recklessness" under Texas law is one that varies according to the context. As one Texas court explained, in the context of negligent entrustment:

> drivers have been determined to be reckless when their history of driving habits, traffic violations, or intemperance (whether due to wilful and wanton actions or otherwise) exhibits a pattern of such deviations from lawful and proper manner of vehicle operation that if the entrustor had knowledge of the history, the entrustor should reasonably have anticipated that the driver would operate the entrusted vehicle in a wrongful manner and thereby damage persons or property.

*Pesina v. Hudson*, 132 S.W.3d 133, 137–38 (Tex. App.—Amarillo 2004, no pet.). Although an individual's driving record and accident history are relevant to show recklessness, evidence of isolated or remote incidents is not sufficient to establish that a driver is reckless or incompetent. *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Additionally, a plaintiff is not limited to the prior driving record of the driver to establish negligent entrustment. *See Louis Thames Chevrolet Co. v. Hathaway*, 712 S.W.2d 602, 604 (Tex. App.—Houston [1st Dist.] 1986, no writ). Evidence of the condition, state, or situation of the entrustee at the time of the entrustment may also be considered in determining negligent entrustment. *Id.*

In the present case, the summary judgment evidence is sufficient to create a fact issue that Judson Weaver had a pattern of poor driving and intemperance. The evidence indicates that prior to the incident with Christopher Wright, Judson Weaver had been involved in at least two

car accidents and received a speeding ticket while driving with an invalid license. (*See* Judson Weaver Dep. at 29–31, 139.) Judson Weaver was also arrested in 2000 for public intoxication, 2001 for public intoxication and criminal mischief, and 2002 for possession of marijuana and a dangerous drug. (Judson Weaver Dep. at 23–25, 111.) This evidence, viewed in the light most favorable to the nonmovant, creates a fact issue as to whether Judson Weaver was reckless or incompetent to drive at the time Joe and Cathey Weaver entrusted him with the vehicle.

### 4. Owner's Knowledge

However, to survive summary judgment in a negligent entrustment case, it is not enough to simply show that the driver entrusted was reckless, incompetent, or negligent. *See Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987). In addition, the "defendant entrustor should be shown to be reasonably able to anticipate that an injury would result as a natural and probable consequence of the entrustment." *Id.* Therefore, Plaintiff must also show Defendants knew or should have known that Judson Weaver was reckless, incompetent or negligent. Here, the summary judgment indicates that Joe and Cathey Weaver were aware of Judson's accidents, speeding tickets, and drug and alcohol offenses. Therefore, there is a fact issue as to whether the Weavers knew or should have known that Judson was too reckless or incompetent to be entrusted with a vehicle.

### 5. Negligence of the Driver

Finally, Defendants argue Plaintiff cannot establish that Judson Weaver acted negligently on the night in question because Plaintiff has asserted an alternative claim that Judson acted intentionally. This argument also fails. To succeed on a negligent entrustment theory, "a plaintiff must prove, among other elements, that the driver was negligent on the occasion in

question and that the driver's negligence proximately caused the accident," *Shupe v. Lingafelter*, 192 S.W.3d 577, 580 (Tex. 2006). However, Federal Rule of Civil Procedure 8(a)(3) permits a plaintiff to make a demand for relief, "which may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(3). Although a jury cannot find the same conduct to be both intentional and negligent, Plaintiff is permitted to pursue intentional tort and negligence claims alternatively.

### C. CONCLUSION

Defendants' Motions for Summary Judgment (Dkt. 91, 92) are **DENIED**. Genuine issues of material fact exist regarding Plaintiff's negligent entrustment claims against Joe and Cathey Weaver.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DRAM SHOP CLAIMS AND FAILURE TO PROVIDE SECURITY CLAIMS

### A. DRAM SHOP LIABILITY CLAIMS

The sole issue for this court to decide on Plaintiff's dram shop claims is whether there is a fact issue that Defendants are "providers" within the meaning of the Texas Dram Shop Act. Defendants argue summary judgment should be granted, because they did not own or operate the bar and therefore did not provide alcohol to Judson Weaver. (Defs.' Mot. for Summ. J. at 7.) Citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1987), Defendants also argue that Plaintiff has failed to create a fact issue that U.S. Cheema, Inc., 128 Texas, LLC, and 1495JG, Inc. are alter egos of Bright Star Lounge. (Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5.)

In Texas, the Dram Shop Act provides the exclusive means of pursuing dram shop liability for damages caused by intoxication. *Duenez*, 237 S.W.3d at 684–85; TEX. ALCO. BEV.

CODE ANN. § 2.03.  According to the Texas Supreme Court, "[t]he risk and likelihood of injury resulting from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall."  *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).  Recognizing this danger, the Texas Legislature"enacted the Dram Shop Act to deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public."  *Duenez*, 237 S.W.3d at 684.  To prove liability under the Act, a plaintiff must show that:

> (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and

> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV. CODE ANN. § 2.02(b).

Under the Dram Shop Act, a provider is "a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the terms of this code or who otherwise sells an alcoholic beverage to an individual."  TEX. ALCO. BEV. CODE ANN. § 2.01(1). Texas courts have construed the term "provider" broadly to include any person or entity actually engaged in the sale of alcohol.  *See, e.g.*, *Duenez*, 237 S.W.3d at 682 (convenience store owner sued under Act for sale of beverages to driver); *Borneman v. Steak & Ale, Inc.*, 22 S.W.3d 411, 412 (Tex. 2000) (corporation sued under Dram Shop Act when its restaurant sold alcohol to patron).  Additionally, the actions of an employee in over-serving a person are be attributed to the employer or bar owner, unless "the employer requires its employees to attend certain training

classes, the employee in question actually attended these classes, and the provider did not directly or indirectly encourage that employee to violate the law." *20801, Inc. v. Parker*, 249 S.W.3d 392, 394 (Tex. 2008).

Cases where the statutory definition has not been met, on the other hand, "seem to rely on an absence of alcohol being sold or served." *Mata v. Schoch*, 337 B.R. 135, 137 (Bankr. S.D. Tex. 2005). A wholesale distributor of beer, for instance, was not a "provider" under the Act when the distributor did not directly sell beer to intoxicated persons. *See Schmidt v. Centex Beverage, Inc.*, 825 S.W.2d 791, 794–95 (Tex. App.—Austin 1992, no writ). In *Schmidt*, a wholesale beer distributor sold beer to the operators of an outdoor music festival and the festival's operators in turn distributed the beer to volunteer's for free. *Id.* at 792. Because the distributor was not directly involved in the provision of the alcohol to the volunteers, the court determined it was not a "provider" within the meaning of the Act. *Id.* at 794. Similarly, when the owner of the property on which a bar is located and the owner of the bar are separate entities, the property owner is not a "provider" simply by virtue of its land ownership. *Smith v. Sewell*, 819 S.W.2d 565, 569 (Tex. App.—Dallas 1991), *aff'd*, 858 S.W.2d 350 (Tex. 1993).

## 1. Vikram Cheema

There is conflicting summary judgment evidence concerning Vikram Cheema's affiliation with the Bright Star Lounge. Although Cheema admits he acquired the Bright Star Lounge property in January 2007, he maintains that Sucha Dhillon was responsible for operating the property in March 2007. (Cheema Aff'd ¶ 11.) According to Cheema, he was not personally responsible for operating or managing the bar at the time of the Wright-Weaver incident. Instead, Cheema maintains that Dhillon agreed to remain after the sale of the property and

operate the bar because Cheema was unfamiliar with the business. (Cheema Aff'd ¶ 11.)

However, the deposition testimony of Sarah Ashley contradicts these statements. Ms. Ashley

was a bartender at the Bright Star Lounge from January 2007 to March 7, 2007. (*See* Ashley

Dep. at 91–92.) During that time period, Ms. Ashley reports that Cheema was actively engaged

in the bar's operation. Ms. Ashley states that she delivered the bar's nightly earnings to Cheema

and talked to Cheema about the need for increased security at the bar. (*Id.* at 90.) This evidence

creates a fact issue about whether Vikram Cheema owned, operated, or otherwise controlled the

bar on or before March 7, 2007.

## 2. Harjeet Singh

The summary judgment evidence is also inconclusive as to Harjeet Singh's affiliation

with the Bright Star Lounge. According to Defendants, Harjeet Singh was simply a friend of

Vikram Cheema who has never been an officer, director, owner, shareholder, or employee of any

of the corporate defendants in this case. (Defs.' Mot. for Summ. J. at 5.) Singh states that prior

to the Wright-Weaver incident he was acquainted with Cheema and visited the bar about four or

five times. (Singh Aff'd ¶ 9.) After the Wright-Weaver incident, Singh admits he assisted

Cheema in reopening the bar by serving as the organizer for Texas Lounge, Inc. and by applying

for a liquor license after the Bright Star was closed by the TABC. (*Id.* at ¶¶ 11, 12.) However,

bartender Sarah Ashley states that she understood Harjeet Singh to be Cheema's brother and

believed that he had the authority to hire and fire employees before the Wright-Weaver incident.

(*See* Ashley Dep. at 91.) According to Ms. Ashley, Singh threatened to fire her if she did not go

to his room to sleep with him. (*Id.*) Additionally, the summary judgment evidence indicates that

in January 2007, a $60,000 wire transfer was made between U.S. Cheema, Inc. and Ravinder

Kaur, Singh's wife. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. I.) Although Singh does not deny this transfer took place, he has not provided any explanation for this transaction between U.S. Cheema, Inc. and his wife. (Singh Dep. at 93.) According to Singh, he thinks "this money might be coming from Canada where Mr. Cheema's sisters live who borrowed the money like that." (*Id.*) Therefore, while Defendants endeavor to portray Singh as a mere social acquaintance of Cheema, the evidence before the court creates a fact issue concerning Singh's true relationship to the Bright Star Lounge.

**3. U.S. Cheema, Inc.,**

There is also a fact issue concerning U.S. Cheema, Inc.'s connection to the Bright Star Lounge. The summary judgment evidence indicates that this entity was formed by Vikram Cheema and had an ownership interest in hotel and bar property central to this lawsuit. Although Texas courts have declined to impose dram shop liability on corporate landowners when they are not involved in the actual operation of the bar property, the evidence in the present case creates a fact issue as to whether officers of U.S. Cheema, Inc. were detached corporate managers or actively involved in the daily operations of the bar. *See Sewell*, 819 S.W.2d at 569. To the extent Defendants argue veil piercing is inappropriate against U.S. Cheema, Inc., the court did not consider these arguments because Plaintiff's responsive briefing asserts that no alter ego liability is alleged against U.S. Cheema, Inc.

**4. 128 Texas, LLC and 1495JG, Inc.**

Defendants also argue that alter ego liability is inappropriate against 128 Texas, LLC and 1495JG, Inc. The court finds there is a genuine issue of material fact with regard to Plaintiff's veil piercing claims against 128 Texas, LLC and 1495 JG, Inc.

In Texas, piercing the corporate veil is not a cause of action, but is instead a means of imposing liability for an underlying cause of action. *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119 (Tex. App.—Austin 1987, writ denied). In general, courts will "disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). In the context of tort cases, courts disregard the corporate fiction in the following circumstances:

> (1) when the fiction is used as a means of perpetrating fraud;
>
> *(2) where the corporation is organized and operated as a mere tool or business conduit of another . . .;*
>
> *(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation*;
>
> (4) where the corporate fiction is employed to achieve or perpetrate monopoly;
>
> (5) where the corporate fiction is used to circumvent a statute; and
>
> (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* at 272 (footnotes omitted) (emphasis added).

Although Defendants attempt to portray 128 Texas, LLC and 1495JG, Inc. as distinct from the individuals and entities that owned and operated the Bright Star Lounge, the evidence before the court suggests that the corporations were owned and operated by the same individuals. Plaintiff has presented sufficient evidence to create a fact issue that these corporate forms were used "as a means of evading an existing legal obligation" or that they were "organized and operated as a mere tool or business conduit of another." *See id.*

## B. FAILURE TO PROVIDE SECURITY CLAIM

In Texas, a complaint that a landowner failed to provide adequate security may be construed as either a premises liability or a negligent activity claim. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998). When recovery is based on a negligent activity theory, the plaintiff must show that he was "injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Id.* (quotations omitted). Therefore, negligence in the context of negligent activity "means simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done." *Id.* Negligence in the context of premises liability, on the other hand, "means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care should know about." *Id.* (quotations omitted). Although ordinarily failure to provide security claims are treated as premises liability claims, in the present case Plaintiff asserts alternative theories of recovery. *See id.*

### 1. Negligent Activity Claim

The facts in the present case do not support a claim for negligent activity. To prove liability under a negligent activity theory, the plaintiff must establish: "a duty, a breach of that duty, and damages proximately caused by the breach." *Kroger v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). As discussed above, however, recovery under a negligent activity theory is based on a negligent *action* by the defendant rather than the failure to correct a condition. *See Timberwalk*, 972 S.W.2d at 753. Although Plaintiff acknowledges the distinction between a claim for premises liability and negligent activity, he does not provide sufficient facts to show

how or why his claims should be construed as a negligent activity claim.  Similar to the plaintiff in *Timberwalk*, Plaintiff in the present case does not allege that he was injured by or as a contemporaneous result of any activity of Defendants.  *See id.*  Instead, the only activity that injured Wright was Weaver's.  Therefore, what Plaintiff actually asserts is that Defendants' "failure to provide adequate security measures created an unreasonable risk of harm that Defendants' knew or should have known about and yet failed to correct."  *See id.*  This is a premises liability claim, not a claim for negligent activity.  There is no triable issue of negligent activity against Vikram Cheema, Harjeet Singh, U.S. Cheema, 128 Texas, Inc., 1495JG, Inc., or any other individual or corporate owner of the Bright Star Lounge.  Defendants motion for summary judgment is granted with respect to Plaintiff's negligent activity claim.

## 2.  Premises Liability Claim

"Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred."  *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Although generally Texas law does not impose a duty on a person or landowner to protect others from third-party criminal acts, a property owner does have a duty to protect invitees from criminal conduct when the risk is so great that it is both unreasonable and foreseeable.  *Trammell Crow Cent. Tex., LTD., v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008).  Defendants argue summary judgment is proper because they did not have a duty to provide security and there is no evidence that the failure to provide security actually caused Wright's injuries.

*a. Duty*

The existence of a duty is a question of law that is determined by considering evidence of past criminal incidents on the property. *Id.* However, it is not enough for a plaintiff to simply show the existence of some past criminal acts. "If a landowner had a duty to protect people on his property from criminal conduct whenever crime *might* occur, the duty would be universal. This is not the law. A duty exists only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable." *Timberwalk*, 972 S.W.2d at 756.

To determine foreseeability, Texas courts apply a two-pronged analysis. *See Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 656–57 (Tex. 1999) (plurality opinion). Under this analysis, the first consideration is whether the particular criminal conduct was foreseeable in light of "specific crimes on or near the premises." *Id.* at 656 (quotations omitted). Texas courts weigh five factors – proximity, publicity, recency, frequency, and similarity – to determine whether the general danger of the criminal act was foreseeable. *Id.*; *Trammell Crow*, 267 S.W.3d at 15. These factors are considered together, "in light of what the premises owner knew or should have known before the criminal act occurred." *Id.* If the general danger of the criminal act was foreseeable, the second prong of the analysis requires the court to determine "whether it was foreseeable that the injured party, or one similarly situated, would be the victim of the criminal act." *Mellon*, 5 S.W.3d at 656–57. In essence, this requires the court to consider whether the injured person was an invitee, licensee, or trespasser. *See id.* at 655.

In the present case, Defendants argue summary judgment is proper on Plaintiff's failure to provide security claim, because they had no duty to protect Plaintiff against the criminal acts of a third party. (Defs.' Mot. for Summ. J. at 7.) According to Defendants, the incident between

Wright and Weaver was unforeseeable because there is no evidence of prior similar criminal activities and business at the Bright Star Lounge was typically slow on weekday evenings. (Defs.' Mot. for Summ. J. at 8.)

It is not disputed that Christopher Wright was an invitee – he was a patron of the Bright Star on the evening of the incident. Therefore this court's analysis is focused on the first prong of foreseeability. That is, whether past criminal acts at the Bright Star were sufficiently proximate, similar, frequent, recent, and public, to make the general danger of the criminal acts foreseeable. *See Trammell Crow*, 267 S.W.3d at 15.

Criminal conduct at the Bright Star was not unforeseeable as a matter of law. The summary judgment evidence indicates that similar bar fights occurred at the Bright Star in the months leading up to the Wright-Weaver incident. In her deposition, bartender Sarah Ashley described confrontations with Cheema over the lack of security at the bar and three altercations that occurred while she was working at the bar. (Ashley Dep. at 81–86.) The first fight Ms. Ashley recalls occurred while the bar was rented out to a group for a party. (*Id.* at 84.) According to Ms. Ashley she did not witness the altercation, but called the police after bar patrons reported that a fight broke out in the bathroom/foyer area of the bar: "I don't know what happened. I was bartending and a bunch of people ran in and just said there was an altercation in the bathroom and I called the police . . . ." (*Id.* at 85.) Two similar incidents occurred while Ms. Ashley was working at the Bright Star Lounge:

> There was a fight in the parking lot that just – somebody came in and said people were fighting out there so we called the police. I didn't go out there because I wasn't going to put myself in that dangerous situation. The other time was I stopped serving this guy alcohol and he tried to hit me.

(*Id.* at 86.) Although Ms. Ashley could not remember the specific dates of these incidents, she

worked at the Bright Star Lounge for a brief period in December 2006, and then again from late January 2007, to March 6, 2007. (Ashley Dep. at 87–88.) Exhibits 9 and 10 attached to Vikram Cheema's Affidavit corroborate this testimony. First, on February 16, 2007, a 911 call was made concerning a disturbance at the Bright Star Lounge. The dispatch notes indicate the incident involved criminal trespass. (Cheema Aff'd Ex. 9.) Then on February 25, 2007, an ambulance was dispatched to the Bright Star Lounge for an assault that resulted in a head injury. (*Id.* at Ex. 10.)

### i. Proximity

"For a landowner to foresee criminal conduct on property, there must be evidence that other crimes have occurred *on the property* or *in its immediate vicinity*." *Timberwalk*, 972 S.W.2d at 757 (emphasis added). In the present case, the evidence indicates past criminal conduct took place on the property of the Bright Star Lounge – both in the bar itself and in the parking lot area.

### ii. Recency and Frequency

Texas courts often consider the recency and frequency of past criminal activity in tandem. *Trammell Crow*, 267 S.W.3d at 15. "A criminal act is more likely foreseeable if numerous prior crimes are concentrated within a short time span than if few prior crimes are diffused across a long time span." *Id.* However, the complete absence of crime in an area, or the occurrence of only a few crimes over an extended time period, negates the foreseeability element. *Timberwalk*, 972 S.W.2d at 758.

The past criminal conduct at the Bright Star Lounge was both recent and frequent. The month before the Wright-Weaver incident there were two bar fights between patrons. (*See*

Ashley Dep. at 87–88; Cheema Aff'd Ex. 9–10.)  In addition, Rebecca Nelson, another

bartender, testified that fights and other incidents at the Bright Star Lounge were common:

> Q:     Well, a little bit back, you said something to the effect of something
>        always happens at the Days Inn or the Quality Inn.  Can you tell me what
>        you meant by that?
>
> A:     Well, I mean, it's – Ever – ever since it was – back when it was Trends
>        back in the early '90s, it was – there's just always is – Either TABC shuts
>        them down or, you know, there's just – there's major fights inside the bar.
>        I mean, those cops have been called out there.

(Nelson Dep. at 14.)  There is evidence, therefore, that past criminal conduct was recent and

frequent.

### iii.  Similarity

Foreseeability also requires that the past criminal activity be sufficiently similar to the

crime in question.  *Timberwalk*, 972 S.W.2d at 758.  Past criminal occurrences need not be

identical to be foreseeable: "[f]oreseeability does not require the exact sequence of events that

produced the harm to be foreseeable, – rather, previous crimes need only be sufficiently similar

to the crime in question as to place the landowner on notice of the specific danger."  *Trammell

Crow*, 267 S.W.3d at 16 (quotations omitted).  The evidence in the present case indicates that

similar assaults had occurred at the Bright Star Lounge.  Specifically, there were incidents of

criminal trespass and an assault that resulted in a head injury.  (*See* Cheema Aff'd Ex. 9–10.)

Defendants essentially argue that these past assaults were not sufficiently similar because

they occurred on weekend nights and the altercation in the present case occurred on a weeknight,

when it is undisputed the Bright Star Lounge had fewer patrons. Although the past assaults may

have occurred at different times during the week, these crimes were sufficiently similar to place

the landowner on notice of the danger that disputes between drunken bar patrons could lead to

altercations and even injuries.

### iv. Publicity

Finally, the foreseeability analysis requires evidence of publicity surrounding the previous crimes. *Timberwalk*, 972 S.W.2d at 758. Such evidence "helps determine whether a landowner knew or should have known of a foreseeable danger." *Id.* at 758. "Previous similar incidents cannot make future crime foreseeable if nobody knows or should have known that those incidents occurred." *Id.* at 759. Therefore, while a property owner cannot be charged with the duty "to regularly inspect criminal records to determine the risk of crime in the area," a property owner can be expected to have knowledge of crimes that occur on his property. *See id.*

There is conflicting summary judgment evidence about whether the bar's owners and operators were actually aware of the prior criminal activity. According to Ms. Ashley, she discussed the need for security at the Bright Star Lounge with Mr. Cheema, but to no avail. (Ashley Dep. at 88–89.) Specifically, Ms. Ashley testified that she discussed the bar's security issues after the police were called about a fight in the bar's bathroom:

> Q: And did he – what did you tell him at that point in time?
>
> A: He said – I went in there to drop off the money and he said, "Why were the police here?" And I said, "Because there was a fight," or he – or something like "Why were the police here?" Or "The police were here?" I'm, like, "I know, because there was a fight. We need to have security." He was just like, "Yeah. Yeah, I know." Or he was just like acknowledging the fact of what I was saying, but he wasn't responding for any – to get anything done.

(Ashley Dep. at 89.) But, in his affidavit, Cheema denies any knowledge of past violence or disturbances at the bar: "Prior to March 6, 2007, I was not aware of any fights in the Bright Star Lounge or near the Bright Star Lounge. I was not aware of any fights in the parking lot outside

the Bright Star Lounge." It will be for the jury to resolve this conflicting testimony. However, Defendants should have known about past criminal activity on their property. Although the law does not impose a duty on landowners to search out evidence of crime in the area surrounding their property, it is not unreasonable to expect landowners to be aware of crime that occurs on their premises. *See Timberwalk*, 972 S.W.2d at 757.

Because there is evidence of past criminal conduct at the Bright Star Lounge that was sufficiently proximate, similar, frequent, recent, and public, and because the existence of a duty is a question of law determined by the court, the court finds that the Defendants had a duty to protect invitees from the criminal acts of third parties in this context.

### b. Causation

In Texas, "[p]roximate cause has two elements: cause in fact and foreseeability." *Urena*, 162 S.W.3d at 551. Defendants essentially argue that Plaintiff has failed to create a fact issue that the failure to provide security was the cause in fact of Wright's injuries and that the type of injuries inflicted on Wright were not foreseeable. According to Defendants, Wright's injuries were caused by a superceding cause – racial animus – not the failure to provide security. (Defs.' Mot. for Summ. J. at 10–11.) The court will address each element of proximate cause in turn.

### i. Cause in Fact

Cause in fact is established by proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) "but for" the act or omission, the harm would not have occurred. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). Therefore, a plaintiff must do more than simply show the defendant's negligence contributed to the harm. *Id.* The negligent act or omission must be a

"substantial factor" in causing the injury. *Urena*, 162 S.W.3d at 551. An act is not a substantial factor unless it is actually the reason the harm occurred. *Id.* Accordingly, cause in fact is not established where "the defendant's negligence merely furnished a condition that made the injuries possible . . . ." *Id.*

In the present case, the relevant inquiry is whether Plaintiff has presented evidence that creates a genuine issue of material fact that Defendants' failure to provide security was a substantial factor in bringing about the altercation that caused Christopher Wright's injuries. Plaintiff's evidence suggests that the female bartenders at the Bright Star were unable to control unruly patrons and large crowds. (Ashley Dep. at 81–87.) The evidence also indicates that the bartenders felt unsafe confronting intoxicated patrons and requested security (*Id.*) This constitutes evidence that the failure to provide security may have been a substantial factor in causing Wright's injuries. It is not within the province of the court to weigh this evidence and determine whether the failure to provide security was actually a substantial factor. That determination is a question of fact, to be decided by a jury.

### ii. Foreseeability

Because the questions of duty and causation both rely on foreseeability, their determinations "are often used in a confused and overlapping way." *Mellon*, 5 S.W.3d at 659. Texas courts, however, apply different analyses in each context. *Id.* In the context of proximate cause, foreseeability "means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549–50 (Tex. 1985). Although typically the criminal conduct of a third party is a superceding cause that relieves the negligent actor from liability, such negligence is

not excused when the criminal conduct is foreseeable.  *Id.* at 550.

To determine foreseeability in the context of proximate cause, Texas courts apply a burden shifting framework.  *Phan Son Van v. Peña*, 990 S.W.2d 751, 754 (Tex. 1999).  First, a defendant who seeks to negate foreseeability on summary judgment must present evidence that the intervening criminal conduct was not foreseeable.  This requires that a defendant do more than simply show that intervening criminal conduct occurred.  *Id.*  To determine when evidence of criminal conduct rises to the level of superseding cause, Texas courts consider the following factors:

> (a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.*  If, in light of these factors, the defendant negates foreseeability, the "burden then shifts to the plaintiff to raise a fact issue by presenting controverting evidence that the criminal conduct was foreseeable."  *Id.*

Defendants argue that the criminal conduct in this case was not foreseeable because it

was the result of racial animus.  However, Defendants have presented sparse evidence to support their theory that racial animus was the sole cause of the incident in question.  To support their claim that Weaver's conduct was unforeseeable, Defendants simply state: "if this incident was the result of a racial slur and racial attitude on the part of Defendant Judson Weaver as alleged by Plaintiff that is not something that would be foreseeable from the serving of alcohol to Judson Weaver."  (Defs.' Mot. for Summ. J. at 11.)  However, there is also evidence that Weaver had consumed alcohol at Defendants' establishment.

Even assuming *arguendo* that Defendants' evidence is sufficient to negate foreseeability under the *Phan Son Van* framework, Plaintiff has presented sufficient controverting evidence that the criminal conduct was foreseeable.  As discussed in the context of duty, there is evidence of similar altercations at the Bright Star prior to the Wright-Weaver incident.  One of these fights occurred in the parking lot and resulted in a head injury.  (*See* Ashley Dep. at 86.)  This evidence creates a genuine issue of material fact that Weaver's assault on Wright was foreseeable. Accordingly, Defendants' motion for summary judgment on Plaintiff's premises liability claims is **DENIED**.

### C.  CONCLUSION

Defendants' motion for summary judgment on Plaintiff's premises liability claim is denied.  However, because there is no factual basis for Plaintiff's negligent activity claim, Defendants' motion for summary judgment on this claim is granted.  Therefore, Defendants' motion for summary judgment (Dkt. 93.) is **GRANTED IN PART** and **DENIED IN PART**.

## V.  CONCLUSION

Plaintiff has presented sufficient evidence to create genuine issues of material fact with

respect to his negligent entrustment, dram shop and premises liability claim.  Defendants Joe and Cathey Weavers' motions for summary judgment on Plaintiff's negligent entrustment claims (Dkt. 91, 92.) are **DENIED**.  Because there is a fact issue concerning which Defendants are providers under the Dram Shop Act, Defendants Harjeet Singh, Vikram Cheema, US Cheema, Inc., 128 Texas, LLC and 1495JG, Inc.'s motion for summary judgment on Plaintiff's dram shop claim (Dkt. 93.) is also **DENIED**.  Finally, because there is no triable issue of negligent activity, Defendants' motion is granted with respect to this claim.  There is, however, a genuine issue of material fact with respect to Plaintiff's premises liability claim, and Defendants' motion for summary judgment on premises liability is denied.  Accordingly, Defendants Harjeet Singh, Vikram Cheema, US Cheema, Inc., 128 Texas, LLC and 1495JG, Inc.'s motion for summary judgment (Dkt. 93.) is **GRANTED IN PART** and **DENIED IN PART**.

   **IT IS SO ORDERED.**

    **SIGNED this the 22nd day of December, 2009.**

     _Richard A. Schell_
     RICHARD A. SCHELL
     UNITED STATES DISTRICT JUDGE